JENNIFER R. BERGH (SBN 14480)
THE LAW OFFICES OF MICHELLE GHIDOTTI
8716 Spanish Ridge Ave., #115
Las Vegas, NV 89148
Tel: (949) 427-2010
Fax: (949) 427-2732
Email: JBergh@ghidottilaw.com

Attorneys for Creditor
Bridgecrest Credit Company, LLC, its successors and assigns

UNITED STATES BANKRUPTCY COURT

DISTRIC OF NEVADA – LAS VEGAS DIVISION

| | |
|---|---|
| In re: | Case No. 18-11093-leb |
| JAMES DENNIS ROUFUS<br>Debtor. | Chapter 13 |
| | OPPOSITION TO MOTION TO VALUE COLLATERAL AND "CRAM-DOWN" VEHICLE LOAN |
| | Automobile: 3FAHP0CG8CR307000 |
| | Honorable LAUREL E. BABERO |

TO THE HONORABLE LAUREL E. BABERO UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, HIS ATTORNEY OF RECORD AND THE CHAPTER 13 TRUSTEE, KATHLEEN A. LEAVITT:

1

Bridgecrest Credit Company, LLC ("**Creditor**"), a secured creditor of JAMES DENNIS ROUFUS ("**Debtor**"), hereby objects to the Motion to Value/Cram Down (the "**Cram Down**") filed by Debtor on August 31, 2018.

This objecting Creditor holds a purchase money security interest in a 2012 Ford Fusion AWD V6 FFV, motor vehicle (the "**Vehicle**"), with a VIN No.: of 3FAHP0CG8CR307000. Debtor undervalues the Vehicle at $4,200.00.

# I

## STATEMENT OF FACTS

1. On or about March 1, 2018, Debtor filed a voluntary Petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, District of Nevada, Petition No.: 18-11093-leb (the "**Instant Petition**").

2. On or about May 1, 2015, the Debtor entered into the Contract with Creditor. The proceeds of the Contract were used to purchase the Vehicle. A true and correct copy of the Contract is attached to the Opposition as **Exhibit "A"**.

3. The Contract is secured by a Lien on a vehicle described as a 2012 Ford Fusion AWD V6 FFV, motor vehicle with a VIN No.: of 3FAHP0CG8CR307000. A true and correct copy of the Lien and Title Information Report is attached to the Opposition as **Exhibit "B"**.

4. The Debtor's Motion proposes a valuation in the amount of $4,200.00 based upon a Vehicle Appraisal attached to Debtor's Motion.

5. Pursuant to the NADA Guidelines the Clean Retail value of the vehicle totals no less than $7,875.00. A true and correct copy of the NADA Guide is attached hereto as **Exhibit "C"**.

6. The total owed to Creditor totals no less than $13,411.08.

# II

# ARGUMENT

**A. DEBTOR'S MOTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE**:

Debtor relies on an Appraisal that is dated August 28, 2018, and is not supported by a declaration. The value of the Vehicle must be ascertained as of the Petition date, March 1, 2018. Furthermore, the Value is not supported by credible evidence supported by foundation or a declaration. Here, the only evidence before the Court provided by Debtor are the admissions Debtor made when filing the Chapter 13 petition. The admissions that Debtor made in its filings are binding judicial admissions. See In re Rolland, 317 B.R. 402, 403. Debtor filed his Schedules "A", "Schedule "D", and Chapter 13 Plan in which Debtor asserted that the value of the Vehicle was no less than $6,500.00. Debtor now asserts the value of the Vehicle is far less, at $4,200.00. Debtor does not offer admissible evidence to support the valuation of $4,200.00.

**B. THE NADA GUIDE RETAIL VALUE IS THE APPROPRIATE VALUE OF THE VEHICLE:**

The appellate courts of the Ninth Circuit have not yet established a specific post-BAPCPA method for calculating the retail value of vehicles under the second sentence of § 506(a)(2). See In re Carlson, 2006 WL 4811331, at *2. At least two bankruptcy courts, however, have articulated approaches for valuation under § 506(a)(2). See In re Cheatham, No. 07–40509–13–abf, 2007 WL 2428046 (Bankr.W.D.Mo. June 19, 2007) (calculating retail value of car by reducing the N.A.D.A. Guide retail value by 5%); In re Coleman, 373 B.R. 907, 912–13 (Bankr.W.D.Mo.2007) (decision by the same court as In re Cheatham, following its earlier decision); In re Carlson, 2006 WL 4811331, at *2–3 (calculating retail value of mobile home under § 506(a)(2) in reliance on N.A.D.A. Guide retail value). Nonetheless, In re Carlson, In re Cheatham, and In re Coleman all rely on the N.A.D.A. Guide retail value as an appropriate

starting point for determining retail value under § 506(a)(2).  In general, these cases suggest that the emergent approach to valuation under § 506(a)(2) requires bankruptcy courts to reduce the N.A.D.A. Guide retail value, or other appropriate retail value, by an amount appropriate in light of evidence concerning the vehicle's condition.

Here, the Retail Value pursuant to the NADA guide for a 2012 Ford Fusion AWD V6 FFV is $7,875.00.  The value of the Vehicle therefore should not be reduced to $4,250.00 pursuant to the Appraisal completed by Daniel C. Watson, date August 23, 2018.  The Appraisal is not supported by a supporting declaration or any explanation as to why the value differs substantially from the widely accepted NADA guide.  Furthermore, Value should be calculated as of the petition date, not the valuation hearing.

C. **REDUCTION OF INTEREST RATE TO 5.0%:**
11 U.S.C. §1325(a)(5)(B)(ii).

Debtor's proposes to reduce Creditor's interest rate from the contract rate of 27.90% to 5.0%.  The bankruptcy court must establish an interest rate based on current market rate of interest for similar loans in region, available to borrowers with similar credit histories to that of Debtor; considering risk factors involved with Debtor's credit history, and Creditor's rates for similar transactions within region. 11 U.S.C. § 1325(a)(5)(B).  In re Glueck, 223 B.R. 514 (Bankr. S.D. Ohio 1998).

D. **CREDITOR HAS NOT HAD AN OPPORTUNITY TO OBTAIN A VALUATION OF THE VEHICLE**:

Creditor requests a continuance to obtain a valuation of the Property if the Court determines that the Value of the Vehicle is not the NADA Retail Value.

WHEREFORE, Creditor opposes the Cram Down Motion filed by Debtor and requests the following relief:

a. The Motion be denied in its entirety;

b. Alternatively for the hearing on the matter to be continued to a date no sooner than 45 days out to allow Creditor the opportunity to obtain an Appraisal of the Vehicle and submit a declaration regarding the same; and

c. For such other and further relief as the Court deems just and proper.

DATED:  September 18, 2018            THE LAW OFFICES OF MICHELLE GHIDOTTI

By: /s/ Jennifer R. Bergh, Esq.
    Jennifer R. Bergh, Esq.
    Attorney for: Bridgecrest Credit Company, LLC

# EXHIBIT "A"

Case 18-11093-leb    Doc 60    Entered 09/20/18 11:15:29    Page 6 of 19

DATE: 05/01/2015

**CONTRACT FOR SALE AND SECURITY AGREEMENT FOR SALE OF VEHICLE WITH PAYMENT OF SIMPLE INTEREST**

| SECTION A: | |
|---|---|
| Buyer's Name(s): James dennis Roufus | Creditor  DRIVETIME |
| Name: | Address:  3030 EAST SAHARA |
| Address:  822 Park Paseo | City:  LAS VEGAS   County: CLARK |
| City:  Las Vegas    County: | State:  NV    Zip: 89104 |
| State: NV    Zip:  89104-1550 | Phone |
| Bus. Phone:    Res. Phone: | Stock No.: |
| | Salesman    Date:  05/01/2015 |

**SECTION B:   DISCLOSURE MADE IN COMPLIANCE WITH FEDERAL TRUTH IN LENDING ACT.**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid after you have made all payments as scheduled. | TOTAL SALES PRICE The total cost of your purchase on credit, including your down payment of $ 1,000.00 |
|---|---|---|---|---|
| 21.744 % | $ 12,141.07 | $ 18,078.01 | $ 30,219.08 | $ 31,219.08 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 123 | 243.72 | 05/18/2015 |
| 1 | 241.52 | 07/03/2020 |
| | | |
| | | |
| | | |

(e).means an estimate

INSURANCE AND DEBT CANCELLATION:
Credit life insurance and credit disability insurance and debt cancellation coverage, which is also know as GAP coverage, are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Term | Signature(s) | |
|---|---|---|---|---|
| Credit Life: | $ N/A | N/A | I want credit life insurance: | N/A |
| Joint Credit Life: | $ N/A | N/A | We want join credit life insurance: | N/A |
| Credit Disability: | $ N/A | N/A | I want credit disability insurance: | N/A |
| Credit Life and Disability: | $ N/A | N/A | I want credit life and disability insurance: | N/A |
| Joint Credit Life and Disability: | $ N/A | N/A | We want joint credit life and single disability insurance: | N/A |
| Debt Cancellation Coverage (GAP Coverage): | $ N/A | N/A | I want debt cancellation coverage (GAP coverage): | N/A |

You may obtain property insurance from anyone you want that is acceptable to the Creditor above. If you get the insurance from the Creditor, you will pay $ N/A    and the term of the insurance will be $ N/A

Security: You are giving a security interest in the goods or property being purchased.

☐ If checked, you are giving a security interest in _____

Late Charge: If a payment is more than 10 days late, you will be charged $15 or 8 percent of the payment, whichever is less.
Prepayment: If you pay off early, you will not have to pay a penalty.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and penalties.

Additional Terms and Conditions: The additional terms and conditions set forth on the reverse side hereof are a part of this contract and incorporated herein by reference.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Nevada Retail Installment Contract 4/11/2013                                                         Page 1 of 6

**SECTION D: VEHICLE RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT.**

This contract is made the 1st (day) of May (month) of 2015 (year) between you, the Buyer(s) shown above, and us, the Seller shown as Creditor above. Having been quoted a cash price and a credit price and having chosen to pay the credit price (shown as the Total Sales Price in Section B above), you agree to buy and we agree to sell, subject to all the terms of this contract, the following described vehicle, accessories and equipment (all of which are referred to in this contract as "Collateral"):

New or Used: __USED__  Year and Make: __2012 Ford__
Series: __Fusion__  Body Style: __AWD SEL 4dr__
If Truck, ton capacity: _____
Manufacturer's Serial Number: __3FAHP0CG8CR307000__
Use for which purchased: (X) Personal  ( ) Business  ( ) Agriculture
INCLUDING:
( ) Sun/Moon Roof  ( ) Air Conditioning  ( ) Automatic Transmission
( ) Power Steering  ( ) Power Door Locks  ( ) Power Seats
( ) Power Windows  ( ) Tilt Wheel  ( ) Vinyl Top
( ) Cassette  ( ) Cruise Control  ( ) AM/FM Stereo
( ) Compact Disc Player _____ Color __BLACK__ / _____
Tires _____ Lic. No. _____

You, severally and jointly, promise to pay to us the Total of Payments (shown in Section B above) according to the Payment Schedule (also shown in Section B above), until paid in full, together with interest after maturity at the Annual Percentage Rate disclosed above.

To secure such payment, you grant to us a purchase money security interest under the Uniform Commercial Code in the Collateral and in all accessions to and proceeds of the Collateral. Insurance in which we or our assignee are named as beneficiary or loss payee, including any proceeds of such insurance or refunds of unearned premiums, or both, are assigned as additional security for this obligation and any other obligation created in connection with this sale. We, our successors and assigns, hereby waive any other security interest or mortgage which would otherwise secure your obligations under this contract except for the security interests and assignments granted by you in this contract.

Address where Collateral will be located:

_____
Street                               City

_____
County                               State

Your address after receipt of possession of Collateral:

_____
Street                               City

_____
County                               State

Notice of Rescission Rights (Option to Cancel): If the Buyer signs here, the notice of rescission rights set forth below is applicable to this contract.
Buyer's signature _____
Co-Buyer's signature _____

STATE DISCLOSURE REQUIREMENTS: The provision of Section B and Section C are incorporated into this agreement for the purpose of state disclosure requirements.

OPTION: _____ You pay no Finance Charge if the Total Amount Financed, item No. 12, Section C, is paid in full on or before _____.

SELLER'S INITIALS _____

**SECTION C: ITEMIZATION OF AMOUNT FINANCED**

| | |
|---|---:|
| 1. Vehicle Selling Price | $14,195.00 |
| Plus: Documentary Fee | $299.00 |
| (This charge represents costs and profit to the dealer for items such as inspecting, cleaning, adjusting vehicles, and preparing documents related to the sale.) | |
| Plus: Emissions Inspection Fee | $0.00 |
| Plus: Other ( N/A ) | N/A |
| Plus: Other ( N/A ) | N/A |
| Total Taxable Selling Price | $14494 |
| 2. Total Sales Tax | $1,174.01 |
| 3. Amounts Paid to Public Officials | |
| a. Titling Fee | $20.00 |
| b. Registration Fee | $0.00 |
| c. Other _____ | N/A |
| Total Official Fees | |
| (Add 3a through 3c) | $20.00 |
| 4. Optional, nontaxable, fees or charges | |
| DriveCare Powertrain | $2,895.00 |
| SkyLink Service | $495.00 |
| Total Optional, nontaxable, fees or charges | |
| (Add 4a through 4d) | $3,390.00 |
| 5. TOTAL CASH SALES PRICE | $19078.01 |
| 6. Gross Trade In Allowance | $0 |

| Year | Make | Model | Model |
|---|---|---|---|
| | | | |

| | |
|---|---:|
| Less Prior Credit or Lease Balance | $0.00 |
| Net Trade in Allowance (If negative, enter 0 and see line 11a) | $0.00 |
| 7. Down Payment (Other than Net Trade-In Allowance): | |
| a. Trade-In Sales Tax Credit | $0.00 |
| b. Cash | $1000 |
| c. Manufacturer's Rebate | N/A |
| d. Deferred Down Payment | N/A |
| e. Other ( N/A ) | N/A |
| Down Payment | |
| (Add 7a through 7e) | $1,000.00 |
| 8. TOTAL DOWN PAYMENT AND NET TRADE-IN ALLOWANCE | |
| (Add 6 and 7) | $1,000.00 |
| 9. UNPAID BALANCE OF CASH SALES PRICE | |
| (Subtract 8 from 5) | $18,078.01 |
| 10. Plus Optional Insurance and Debt Cancellation Charges* | |
| a. Credit Life Insurance Premium | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| b. Credit Disability Insurance Premium | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| c. Debt Cancellation Coverage (GAP Coverage) | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| d. Other Insurance | |
| Paid to ( N/A ) | |
| Term ( N/A ) | N/A |
| Total Optional Insurance and Debt Cancellation Charges | |
| (Add 10a through 10d) | N/A |
| 11. Other Amounts Financed* | |
| a. ( N/A ) | |
| Paid to ( N/A ) | |
| Total Other Amounts Financed | N/A |
| 12. Total Amount Financed | |
| (Add 9, 10 and 11) | $18,078.01 |

* Seller may retain or receive a portion of this amount.

Nevada Retail Installment Contract 4/11/2013                                    Page 2 of 6

**SECTION E:**

☐ If checked, you agree to use electronic records and electronic signatures to document this contract. Your electronic signatures on electronic records will have the same effect as signatures on paper documents. We may designate one authoritative copy of this contract. If we do, the authoritative copy will be the electronic copy in a document management system we designate for storing authoritative copies. We may convert the authoritative copy to a paper original. We will do so by printing one paper copy marked "Original." This paper original will have your electronic signature on it. It will have the same effect as if you had signed it originally on paper. If you agree to use electronic records and electronic signatures, we will comply with all applicable federal, state and local law and regulations.

UPON ENTERING INTO THIS CONTRACT, YOU WILL RECEIVE A PAPER COPY OF THE ORIGINAL CONTRACT ELECTRONICALLY SIGNED AND COMPLETE WITH ALL TERMS, CONDITIONS AND DISCLOSURES TO TAKE WITH YOU.

## NOTICE TO BUYER

**Do not sign this agreement before you read it or if it contains any blank spaces. You are entitled to a completed copy of this agreement. If you pay the amount due before the scheduled date of maturity of the indebtedness and you are not in default in the terms of the contract for more than 2 months, you are entitled to a refund of the unearned portion of the finance charge. If you fail to perform your obligations under this agreement, the vehicle may be repossessed and you may be liable for the unpaid**

If you are buying a used vehicle with this contract, as indicated in the description of the vehicle above, federal regulation may require a special buyer's guide to be displayed on the window.

THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

The text of the preceding two paragraphs is set forth below in Spanish:

Si usted está comprando un vehículo usado mediante este contrato según la descripción del vehículo arriba, la ley federal podrá exigir que la ventanilla demuestre una guía especial para el comprador.

LA INFORMACIÓN QUE USTED VE EN LA FORMA DE VENTANILLA PARA ESTE VEHÍCULO ES PARTE DE ESTE CONTRATO. LA INFORMACIÓN EN LA FORMA DE VENTANILLA DOMINA CUALESQUIER ESTIPULACIÓN CONTARIA EN EL CONTRATO DE VENTA.

BUYER AND CO-BUYER ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED-IN COPY OF THIS CONTRACT AND THE ABOVE DISCLOSURE AT THE TIME OF SIGNING.

LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED UNLESS OTHERWISE INDICATED IN SECTION C ABOVE.



Buyer: X _____  Date: 05/01/2015   Co-Buyer: _____  Date: 05/01/2015
Creditor: DRIVETIME   Date: 05/01/2015
By: _____

### (CONT'D) ADDITIONAL TERMS AND CONDITIONS

**Simple Interest Contract:** This is a simple interest contract. The Finance Charge, Total of Payments and Payment Schedule set forth in the disclosures on page 1 of 5 may differ. The final payment may differ depending upon the dates payments are received and events which occur after this contract is made. For example, early payments will have the effect of reducing your final payment, while late payments will cause your final payment to be higher. Your promise requires you to pay the final payment on the date due, which payment will be equal to all unpaid sums due under this contract, even if the amount of the final payment differs from the amount of final payment disclosed on the reverse side hereof.

**Default:** If you default in the performance of any of the terms and conditions of this agreement, including, but not limited to, making of any payment later than 30 days of when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise, or if the vehicle is damaged or destroyed, we may at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, and (3) take immediate possession of the vehicle. Upon taking possession of the vehicle and giving notice as provided by law, if you do not redeem the vehicle, we will sell it at public or private sale. We may purchase the vehicle at any sale. The proceeds of the sale will be applied first to the expenses of retaking, reconditioning, storing and selling the property, and the remainder will be applied to the unpaid sums owing under this contract. Attorney's fees and court costs are allowed too. If there is any money left over (surplus) it will be paid to you. If a balance still remains owing, you promise to pay that balance upon demand. If you default or breach this agreement you agree to pay finance charges at the Annual Percentage Rate shown on the reverse side until all sums owing us are paid in full. Our remedies are cumulative and taking of any action is not a waiver and does not prohibit us from pursuing any other remedy. You promise to pay reasonable collection costs and expenses, including attorney's fees, if you default under this agreement. If suit is filed, you agree that attorney's fees and costs will be awarded to the prevailing party. If the vehicle is repossessed we may store personal property found in the vehicle for your account and at your expense and if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.

Nevada Retail Installment Contract 4/11/2013                                                                                    Page 3 of 6

**Delinquency and Collection Charges:** You will pay a delinquency charge equal to the lesser of $15 or 8 percent of any installment in default for more than 10 days. If you default as described in the preceding paragraph and we refer this contract for collection to an attorney who is not our salaried employee or a salaried employee of the holder of this contract, you will pay reasonable attorney's fees plus court costs, and

**Demand for Full Payment and Additional Remedies on Default:** If you default under this contract, at the time of the default or any time after default (if the default has not been cured previously) we may require immediate payment of the unpaid portion of the amount you owe us. If there is any money left over (surplus) it will be paid to you. On any default, we will have all the remedies of a secured party under the Uniform Commercial Code. If the cash price on the reverse hereof is $1,000 or less, you will not be personally liable for any deficiency incurred in a sale after repossession.

**Ownership of the Collateral:** You represent that there are no liens, claims or encumbrances on the Collateral except for the security interest you grant by this contract to us and you further represent that you have executed no financing statement covering the Collateral except for one

**Location and Use of Collateral:** You agree to notify us in writing of any change of your address or of any change in the location of the Collateral. Unless you first have received our written consent, you may not take the Collateral out of the State shown in Section D in the section entitled "Address Where Collateral Will Be Located" and you may not sell, lease or otherwise dispose of the Collateral or any part of it by any means. You will comply with all laws, ordinances, regulations and orders relating to the Collateral. You will keep the Collateral in good condition and will not alter or substantially modify it or conceal it. You will not allow any other security interest on the Collateral besides the security interest granted to us under this contract.

**Inspection of the Collateral:** We may inspect the Collateral at any reasonable time.

**Taxes:** You are responsible for and will pay when due all taxes and assessments levied on the Collateral. If you fail to do so, we may pay any such tax or assessment on your behalf. An amount equal to that which we paid will be added to the Total of Payments then owing and you will be charged a finance charge on the amount we paid at the highest lawful contract rate.

**Property Insurance:** You will keep the Collateral insured against such risks and in such amount as we may from time to time require with an insurer that you choose and we approve. As indicated in Section B, if you choose, we will obtain property insurance for you at the premium shown. Whether the insurance is provided by you or by us, you will pay all premiums for this insurance when the premiums are due and payable. If you provide property insurance, you will deliver the policies to us as additional security and will provide us with receipts showing payment of premiums. If you do not obtain the insurance or pay the premiums, we may do so for you. If we do this, an amount equal to that which we have paid for the premiums will be added to the Total of Payments then owing and a finance charge at the highest lawful rate will be charged on that amount. If we do not obtain the insurance, none of our other rights and remedies will be prejudiced. You agree that any proceeds from insurance are to be used to either repair or replace the vehicle. Whether or not the vehicle is insured, you must pay for it if it is lost, damaged or destroyed. If you default (as described above), we may cancel the insurance and credit any insurance premium refunds to the unpaid balance of this contract.

LIABILITY INSURANCE IS NOT REQUIRED BY THIS CONTRACT. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM LIABILITY INSURANCE IS TO BE OBTAINED.

**Information to Insurance Company or Agent:** You give your permission to furnish any information about the Collateral or any information about insurance policies on the Collateral to an insurance agent or company.

**Credit Life Insurance, Credit Disability Insurance and Debt Cancellation Coverage (GAP Coverage):** If you indicated in Section B that you want optional credit life insurance, credit disability insurance or debt cancellation coverage (GAP coverage), or any combination thereof, you agree to pay for such insurance at the premium shown in Section B.

NO WARRANTIES: SELLER MAKES NO REPRESENTATIONS, PROMISES OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OF THE COLLATERAL OR WHETHER THE COLLATERAL IS SUITABLE OR FIT FOR THE PARTICULAR PURPOSE INTENDED UNLESS SELLER HAS DONE SO IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY US AS ORIGINAL SELLER OF THE COLLATERAL. HOWEVER, IF SELLER MAKES AN EXPRESS WARRANTY IN THIS CONTRACT OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY SELLER OR, WITHIN 90 DAYS AFTER THE DATE OF THIS CONTRACT, ENTERS INTO A SERVICE CONTRACT WITH THE BUYER THAT APPLIES TO THE COLLATERAL, THE EXCLUSION OF IMPLIED WARRANTIES SET FORTH IN THIS PARAGRAPH DOES NOT EXCLUDE ANY IMPLIED WARRANTIES THAT MAY EXIST WITH RESPECT TO THE COLLATERAL DURING THE TERM OF THE CONTRACT OR AGREEMENT IN WHICH THE EXPRESS WARRANTY IS MADE

**Notices:** Any notice we have to give you pursuant to the Uniform Commercial Code will be reasonable if we send it to your address shown in Section D in the section entitled "Your Address After Receipt of Possession of Collateral" at least 5 days before the event with respect to which notice is required.

**Time is of the Essence:** You understand that all payments that are required must be made on the day due.

**Exercising Our Rights:** We can, without notice, delay enforcing our rights or exercise only part of them, without losing them, or waive a right we have to one Buyer without waiving it as to the other(s).

**Meaning of Words:** In this contract the words "you" and "your" means each and all those who sign this contract as Buyers or Co-Buyers, and their heirs, executors, administrators, successors and assigns. The words "we," "us" and "ours" means the Creditor shown on the reverse in Section A, and if this contract is assigned, its successors and assigns and any other holder of this contract.

**Governing Law:** This contract has been delivered in the State of Creditor's place of business and will be governed by the laws of that State and applicable federal law.

**Invalidity:** Wherever possible each provision of this contract shall be interpreted so that it is valid under applicable law, but if any provision is prohibited or invalid, the remaining provisions of this contract will continue to be valid.

otice of Rescission Rights: The provisions of this paragraph only apply if you have signed the notice of rescission rights on the face of the ontract. (1) You agree to furnish the Seller any documentation necessary to verify information contained in your credit application. (2) You cknowledge that it may take a few days for the Seller to verify your credit and assign the contract. In consideration of the Seller agreeing to eliver the vehicle, you agree that if the Seller is unable to assign the contract to a Financial Institution with whom the Seller regularly does usiness pursuant to terms of assignment acceptable to the Seller, the Seller may elect to rescind the contract. (3) If the Seller elects to rescind ne contract, the Seller shall, within 15 days after the date of the contract, give you notice of the rescission. Such notice shall be deemed given pon deposit of a written notice in the United States mail directed to you at the address you stated in the contract or upon any other manner in hich actual notice is given to you. Upon receipt of such notice, you shall immediately return the vehicle to the Seller in the same condition as hen sold, reasonable wear and tear excepted, and the contract shall be deemed rescinded. The Seller agrees, upon rescission of the contract, ) restore to you all consideration received in connection with the contract, including any trade-in vehicle. (4) If the vehicle is not immediately :turned to the Seller after giving notice of the Seller's election to rescind the contract, you are liable to the Seller for all expenses incurred by the eller in obtaining possession of the vehicle, including attorney's fees, and the Seller has the right to repossess the vehicle as permitted by law. ) While the vehicle is in your possession, all terms of the contract, including those related to the use of the vehicle and insurance for the ehicle, are in force and all risk of loss or damage to the vehicle must be assumed by you. You shall immediately pay all reasonable repair costs lated to any damage to the vehicle while it is in your possession or under your control and until the vehicle is returned to the Seller.

you are buying a used vehicle with this contract, as indicated in the description of the vehicle on the reverse side, federal regulation may require special buyer's guide to be displayed on the window.

HE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE /INDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

*************************************************************

ssignment: Seller may transfer this contract to another person ("Assignee"). That person will have all Seller's rights, privileges and remedies. he Seller may assign this contract electronically. Contact DT Acceptance Corporation at PO Box 2997 Phoenix AZ 85062-9917 (888-781-5650) ) determine the Assignee finance company this contract was transferred to.

Seller Signs: _____
By: _Ian Rinde_____
Title: _SM_____

o induce Assignee to purchase the contract, Seller represents and warrants to Assignee as follows: (a) the contract is genuine and the :atements and amounts inserted herein are correct; (b) the contract and security interest arose entirely from the sale of the Collateral or services escribed in the contract, or both; (c) the down payment, if any be shown on the face hereof, has been received and no part thereof was dvanced directly or indirectly by Seller to Buyer; (d) the goods and services have been furnished to the satisfaction of Buyer and all obligations f warranty to Buyer, either express or implied, have been and will continue to be fulfilled by Seller; (e) the Collateral or services, or both, have een sold, provided and delivered to and accepted by Buyer; (f) the security interest granted to Seller in the contract constitutes a valid first lien n the Collateral and has been filed or recorded according to law to preserve the priority of each lien; (g) the Collateral is free and clear of all liens nd encumbrances, except the security interest granted by this contract; (h) the full amount of the stated Total of Payments remains unpaid; (i) eller is the holder of the contract and the security interest in the Collateral free and clear of all liens and encumbrances and Seller has full power nd authority to assign the same; (j) the transaction was consummated on the above date set forth in the contract and Buyer did not receive ossession of the Collateral prior to the date of consummation; (k) Buyer was furnished a completed copy of the contract prior to consummation; ) the Collateral is insured with a company acceptable to Assignee against physical damage in addition to such other risks as Assignee requires nder an insurance policy acceptable to Assignee; (m) Seller has not knowingly communicated to Assignee incorrect information relating to the uyer's application or credit statement or knowingly failed to communicate information relating to such application or credit statement; (n) the icts set forth in the contract are true; (o) Buyer has no defense or counterclaim to payment of the obligation evidenced by the contract; (p) Buyer or, if more than one, each is not a minor and has legal capacity to execute this contract and is liable thereon; and (q) Seller has no reason to elieve the Buyer has ever violated any laws concerning liquor or narcotics.

n the event any warranty shall be breached or any representation shall be false, Seller shall, upon demand and irrespective of whether the ontract is then in default, repurchase the contract from Assignee at a price equal to the unpaid balance of the contract plus accrued interest, or uch other amount agreed to by Seller and Assignee in a separate agreement as in effect on the date of such demand by Assignee, plus any osts or expenses of collection, including attorney's fees, whether incurred by Assignee by suit or on appeal or otherwise. Seller waives all efenses that otherwise might have been available but nothing herein contained shall preclude Assignee from enforcing against Seller any other :medies provided by law for misrepresentation or breach of warranty. In the event of any proceedings commenced by Assignee against Buyer ith respect to the contract, services or the Collateral, if Buyer asserts as a defense, setoff or counterclaim any act, omission or default by Seller. eller shall forthwith on demand repurchase the contract for the amount set forth above. The provisions of this assignment shall be binding on the eirs, representatives, successors, and assigns of Seller and shall inure to the benefit of the successors and assigns of Assignee. The above ssignment provisions apply and are in addition to any obligations of the Seller as provided in the paragraph below endorsed by Seller.

RECOURSE: Seller absolutely and unconditionally guarantees the prompt payment of either the total unpaid amount of the contract and any :crued interest or such other amount agreed to by Seller and Assignee in a separate agreement, together with all costs, expenses and asonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of :ceptance of this guaranty or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by ssignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and aives any and all defenses arising out of the guarantor relationship.

Seller: _____        Title: _____
By:     _____        Date: _____

Nevada Retail Installment Contract 4/11/2013

Page 5 of 6

**2. REPURCHASE:** In the event of default by the Buyer under any of the terms or conditions of the contract, Seller will repossess and repurchase the Collateral, or if the Collateral has already been repossessed, Seller will repurchase the Collateral at the place of repossession or recovery. The Collateral will be repurchased in any event AS IS, at a price equal to the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the default, together with all costs, expenses and reasonable attorney's fees incurred by Assignee in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and waives all other defenses that might otherwise have been available. At the time of repurchase, Seller shall pay to Assignee the purchase price in cash and Assignee may reassign to Seller without recourse and without warranties, express or implied, all title retention or lien instruments and all contracts or promissory notes which Assignee then holds upon such Collateral.

Seller: _____    Title: _____

By: _____    Date: _____

**3. LIMITED ENDORSEMENT:** In the event of default of Buyer before Buyer shall have paid the first _____ installments under the forgoing contract, Assignee may reassign the contract to Seller and Seller agrees, upon tender of such reassignment and in consideration thereof to pay to Assignee either the then unpaid balance of the contract and any accrued interest, or such other amount agreed to by Seller and Assignee in a separate agreement as in effect as of the reassignment, together with all costs, expenses and reasonable attorney's fees incurred in the collection of said amount. Seller waives all defenses arising by reason of any failure to give notice of acceptance of this agreement or default of Buyer, or arising by reason of any extension of time given to Buyer, or by reason of any failure by Assignee to pursue Buyer or the Collateral or other property of Buyer or to resort to other security or remedies which may be available, and Seller waives any other defenses that might otherwise have been available.

Seller: _____    Title: _____

By: _____    Date: _____

**4. WITHOUT RECOURSE:** This assignment shall be without recourse against Seller except for such obligations as are set forth in the assignment above.

Seller: _____    Title: _____

By: _____    Date: _____

# EXHIBIT "B"

# STATE OF NEVADA
## DEPARTMENT OF MOTOR VEHICLES

## CERTIFICATE OF TITLE

| VIN | YEAR | MAKE | MODEL | VEHICLE BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 3FAHP0CG8CR307000 | 2012 | FORD | FUSION SEL | P4D | REDACTED |

| DATE ISSUED | ODOMETER MILES | FUEL TYPE | SALES TAX PD | EMPTY WT | GROSS WT | GVWR |
|---|---|---|---|---|---|---|
| 05/20/2015 | 89642 | F | | | | |

| VEHICLE COLOR | ODOMETER BRAND | | BRANDS |
|---|---|---|---|
| | ACTUAL MILES | | |

**OWNER(S) NAME AND ADDRESS**
ROUFUS JAMES DENNIS
822 PARK PASEO
LAS VEGAS NV  89104-1550

**LIENHOLDER NAME AND ADDRESS**
DT ACCEPTANCE CORP
PO BOX 2997
PHOENIX AZ  85062-2997

**LIENHOLDER RELEASE** - INTEREST IN THE VEHICLE DESCRIBED ON THIS TITLE IS HEREBY RELEASED:

_____     _____
SIGNATURE OF AUTHORIZED AGENT        DATE

_____
PRINTED NAME OF AGENT AND COMPANY

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

_____     _____   ☐ AND
Printed Full Legal Name of Buyer      Nevada Driver's License Number or Identification Number   ☐ OR

_____     _____
Printed Full Legal Name of Buyer      Nevada Driver's License Number or Identification Number

_____
Address     City     State     Zip Code

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
☐ The mileage stated is in excess of its mechanical limits.
NO TENTHS
☐ The odometer reading is not the actual mileage. WARNING: ODOMETER DISCREPANCY.
☐ Exempt - Model year over 9 years old.
ODOMETER READING

_____     _____
Signature of Seller(s)/Agent/Dealership      Printed Name of Seller(s)/Agent/Dealership

I am aware of the above odometer certification made by the seller/agent. ☐     Dealer's License Number _____   Date of Sale _____

_____     Printed Full Legal Name of Buyer
Signature of Buyer

ACCORDING TO THE RECORDS OF THE DEPARTMENT OF MOTOR VEHICLES, THE PERSON NAMED HEREON IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE, SUBJECT TO LIEN AS SHOWN.

CONTROL NO.
REDACTED
(THIS IS NOT A TITLE NO.)

VP-2 (Rev. 8/10)

ALTERATION OR ERASURE VOIDS THIS TITLE

# EXHIBIT "C"

 NADAguides Value Report 4/4/2018

# 2012 Ford Fusion

Sedan 4D SEL AWD



**DEAL ALERT**
New 2018 Ford Fusion

**$372** a month

Get This Deal

## Values

|  | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Retail |
|---|---|---|---|---|
| Base Price | $5,400 | $6,425 | $7,250 | $9,450 |
| Mileage (124,642) | -$1,575 | -$1,575 | -$1,575 | -$1,575 |
| Total Base Price | $3,825 | $4,850 | $5,675 | $7,875 |
| **Options** (add) | | | | |
| **Price + Options** | **$3,825** | **$4,850** | **$5,675** | **$7,875** |
| Certified Pre-Owned (CPO) | | | | +$975 |
| **Certified Price with Options** | | | | **$8,850** |

🔔 **Get Car Price Change Alerts**     [Email address]  Notify Me

**Disclaimer**

**Rough Trade-In** - Rough Trade-in values reflect a vehicle in rough condition. Meaning a vehicle with significant mechanical defects requiring repairs in order to restore reasonable running condition. Paint, body and wheel surfaces have considerable damage to their finish, which may include dull or faded (oxidized) paint, small to medium size dents, frame damage, rust or obvious signs of previous repairs. Interior reflects above average wear with inoperable equipment, damaged or missing trim and heavily soiled /permanent imperfections on the headliner, carpet, and upholstery. Vehicle may have a branded title and un-true mileage. Vehicle will need substantial reconditioning and repair to be made ready for resale. Some existing issues may be difficult to restore. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition.

**Average Trade-In** - The Average Trade-In values on nadaguides.com are meant to reflect a vehicle in average condition. A vehicle that is mechanically sound but may require some repairs/servicing to pass all necessary inspections; Paint, body and wheel surfaces have moderate imperfections and an average finish and shine which can be improved with restorative repair; Interior reflects some soiling and wear in relation to vehicle age, with all equipment operable or requiring minimal effort to make operable; Clean title history; Vehicle will need a fair degree of reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of nadaguides.com may need to make independent adjustments for actual vehicle condition.

**Clean Trade-In** - Clean Trade-In values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Vehicle will need minimal reconditioning to be made ready for resale. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle

condition.

**Clean Retail** - Clean Retail values reflect a vehicle in clean condition. This means a vehicle with no mechanical defects and passes all necessary inspections with ease. Paint, body and wheels have minor surface scratching with a high gloss finish and shine. Interior reflects minimal soiling and wear with all equipment in complete working order. Vehicle has a clean title history. Because individual vehicle condition varies greatly, users of NADAguides.com may need to make independent adjustments for actual vehicle condition. Note: Vehicles with low mileage that are in exceptionally good condition and/or include a manufacturer certification can be worth a significantly higher value than the Clean Retail price shown.

© 2018 National Appraisal Guides, Inc., a wholly-owned subsidiary of J.D. Power. All rights reserved.

| | |
|---|---|
| 1 | JENNIFER R. BERGH, ESQ. |
| 2 | Nevada Bar No.: 14480 |
|   | THE LAW OFFICES OF MICHELLE GHIDOTTI |
| 3 | 8716 Spanish Ridge Avenue, #115 |
|   | Las Vegas, NV 89148 |
| 4 | Tel: (949) 427-2010 |
|   | Fax:  (949) 427-2732 |
| 5 | Email: Jbergh@ghidottilaw.com |
| 6 | |
|   | Attorney for Creditor |
| 7 | Bridgecrest Credit Company, LLC, its Successors and Assigns |

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA – LAS VEGAS DIVISION

| In Re: | ) | CASE NO.:  18-11093-leb |
|---|---|---|
| | ) | |
| JAMES DENNIS ROUFUS, | ) | CHAPTER 13 |
| | ) | |
| Debtors. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**CERTIFICATE OF SERVICE**

     I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is: 1920 Old Tustin Ave., Santa Ana, CA 92705.

     I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1

CERTIFICATE OF SERVICE

On September 20, 2018 I served the following documents described as:

- **OPPOSITION TO MOTION TO VALUE COLLATERAL AND "CRAM-DOWN" VEHICLE LOAN**

on the interested parties in this action by placing a true and correct copy thereof in a sealed envelope addressed as follows:

(Via United States Mail)

| **Debtor**<br>JAMES DENNIS ROUFUS<br>11318 MCKINNEY FALLS ST. UNIT 104<br>LAS VEGAS, NV 89141<br><br>**Joint Debtor**<br>SUSAN FAY ROUFUS<br>11318 MCKINNEY FALLS ST. UNIT 104<br>LAS VEGAS, NV 89141 | **Debtor's Counsel**<br>SETH D BALLSTAEDT<br>THE BALLSTAEDT LAW FIRM<br>9555 S. EASTERN AVE, STE #285<br>LAS VEGAS, NV 89123<br><br>**Chapter 13 Trustee**<br>KATHLEEN A. LEAVITT<br>201 LAS VEGAS BLVD., SO. #200<br>LAS VEGAS, NV 89101 |
|---|---|

__xx___(By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

__xx_(Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

   Executed on September 20, 2018 at Santa Ana, California

/*s / Jeremy Romero*
Jeremy Romero

2
CERTIFICATE OF SERVICE